**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 10-cv-00605-WJM-MEH

CANDELARIA MORENO-GUTIERREZ,

      Plaintiff,

v.

JANET NAPOLITANO, Secretary, U.S. Department of Homeland Security,
ALEJANDRO MAYORKAS, Director, U.S. Citizenship and Immigration Services,
PERRY RHEW, Chief, Administrative Appeals Office, U.S. Citizenship and Immigration Services, and
DANIEL RENAUD, Director, Vermont Service Center, U.S. Citizenship and Immigration Services,

      Defendants.

---

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

---

      In this case, Plaintiff Candelaria Moreno-Gutierrez seeks, amongst other things not relevant to the instant Motion, a declaration that the two-year filing window set forth in 8 U.S.C. § 1154(a)(1)(B)ii)(II)(aa)(CC)(aaa) is a statute of limitation subject to equitable tolling.  (Complaint (ECF No. 3) pp. 15-16.)  Before the Court is Defendants' Motion to Dismiss ("Motion") pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF No. 20.)  On June 21, 2011, the Court held oral argument and took the Motion under advisement. (ECF No. 38.)

      For the reasons set forth below, Defendants' Motion to Dismiss is DENIED.

## I.  LEGAL STANDARD

      The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those

allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To

survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as

true, to provide 'plausible grounds' that discovery will reveal evidence to support the

plaintiff's allegations."  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir.

2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  "The court's function on

a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present

at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a

claim for which relief may be granted."  *Sutton v. Utah State Sch. for the Deaf & Blind*,

173 F.3d 1226, 1236 (10th Cir. 1999).

Under the Administrative Procedures Act ("APA"), the Court may set aside an

agency decision if it determines that the action is "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A).

## II.  BACKGROUND

The relevant facts set forth below are taken from Plaintiff's Complaint and its

attachments and are not in dispute.  Plaintiff Candelara Moreno-Gutierrez is a native

and citizen of Mexico.  (Complaint (ECF No. 3) ¶ 18.)  She married Felipe Gutierrez-

Avila in Mexico in July 2000.  (*Id.* ¶ 19.)  At the time of the marriage, Gutierrez-Avila was

a lawful permanent resident of the United States.  (*Id.* ¶ 20.)  Plaintiff entered the United

States without inspection.  (ECF No. 3 at 57.)

Mr. Gutierrez-Avila was convicted of domestic violence against Plaintiff in May

2004 and again in June 2004.  (*Id.* at 28 & 28.)  Plaintiff obtained a protection order on

both occasions.  (*Id.* at 26-27.)  Because of these convictions, Gutierrez-Avila was

ordered removed by an immigration judge on July 9, 2004.  (Compl. ¶ 23.)  Thus, as of

July 9, 2004, Gutierrez-Avila lost his status as a lawful permanent resident of the United

States.

On February 22, 2006, with the assistance of a victim's rights organization,

Plaintiff retained the services of Colorado Legal Services attorney Jennifer Lee.  (*Id.* ¶

23.)  Attorney Lee submitted Plaintiff's I-360 self-petition (the "Petition") for classification

as a battered spouse of a lawful permanent resident on July 13, 2006—five days after

the two-year time limitation set forth in 8 U.S.C. § 1154(a)(1)(B)(ii)(II)(aa)(CC)(aaa).  (*Id.*

¶ 25.)  Accompanying Plaintiff's Petition was a letter from Lee acknowledging that the

Petition was filed late and stating that the timing of the Petition was due to

administrative error and "entirely the fault of our office."  (*Id.*)

On August 7, 2006, the Vermont Service Center of the United States Custom and

Immigration Services ("USCIS") denied the Petition for failure to include the necessary

filing fee.  (*Id.* ¶ 26.)  Lee re-filed the Petition with additional materials documenting

Plaintiff's inability to pay the filing fee.  (*Id.* ¶ 27.)  The resubmitted Petition was received

by USCIS on August 31, 2006.  (*Id.*)

On June 19, 2007, USCIS issued a Notice of Intent to Deny ("NOID") Plaintiff's

Petition on the grounds that her qualifying relationship to Mr. Gutierrez-Avila did not

exist within the two-year statutory deadline.  (*Id.* ¶ 28.)  Lee then provided USCIS with

additional information accepting total responsibility for the lateness of Plaintiff's Petition.

The documentation included an affidavit from a paralegal at Colorado Legal Services

explaining that Plaintiff had completed her Petition in March 2006 but the paralegal had

inadvertently forgotten to mail it until July 2006.  (*Id.*)

On October 10, 2007, USCIS denied the Petition concluding that the two-year

statutory deadline was not subject to any exceptions or tolling.  (*Id.* ¶ 29.)  Plaintiff

obtained new counsel and filed a motion to reopen and reconsider.  (*Id.* ¶ 30.)  On

October 7, 2008, USCIS reopened the matter and affirmed the prior denial on the same

grounds.  (*Id.* ¶ 31.)

On November 7, 2008, Plaintiff filed a timely appeal of USCIS's denial of her

Petition with USCIS's Administrative Appeals Office ("AAO").  (*Id.* ¶ 32.)  On May 26,

2009, the AAO dismissed Plaintiff's appeal holding: (1) Plaintiff had not met the

requirement for establishing ineffective assistance of counsel; (2) the two-year time

limitation in § 1154(a)(1)(B)(ii)(II)(aa)(CC)(aaa) was a statute of repose and, therefore,

not subject to equitable tolling; and (3) even if it were subject to equitable tolling, Plaintiff

had not shown that she exercised due diligence in pursuing her claim.  (*Id.* ¶ 32.)

On March 5, 2010, Plaintiff filed her Complaint seeking the following: (1) a

declaration that the two-year limitation set forth in § 1154(a)(1)(B)(ii)(II)(aa)(CC)(aaa) is

subject to equitable tolling; (2) a declaration that ineffective assistance can equitably toll

the two-year deadline; (3) a declaration that Bureau of Immigration Affairs's ("BIA")

substantive and documentary requirements for ineffective assistance of counsel do not

apply to proceedings before USCIS; or, in the alternative, (4) a declaration that BIA's

requirements for ineffective assistance of counsel do not require strict compliance when

an attorney admits she was ineffective; (5) a declaration that Plaintiff is a battered

spouse pursuant to 8 U.S.C. § 1154(a)(1)(B)(ii)(I); (6) a *writ of mandamus* compelling

Defendants to reopen her Petition; and (7) reasonable costs and attorney's fees under

the Equal Access to Justice Act.  (*Id.* pp. 15-16.)

### III.  ANALYSIS

In the instant Motion, Defendants contend that Plaintiff's Complaint fails to state a claim because the two-year eligibility requirement is a statute of repose which, as a matter of law, is not subject to equitable tolling.  (ECF No. 20 at 7.)  Defendants argue that the Court is required to defer to the AAO's interpretation of the two-year deadline in § 1154(a)(1)(B)(ii)(II)(aa)(CC)(aaa) and that, because the AAO's determination is reasonable, Plaintiff's Complaint fails to state a claim upon which relief can be granted.  Therefore, the only issues presently before the Court are: (1) whether Defendants' interpretation of the two-year deadline is entitled to deference; and (2) whether the two-year deadline is a statute of limitation or statute of repose.[1]

## A.    The Statute

Pursuant to 8 U.S.C. § 1154(a)(1)(B)(ii)(I), an alien who self-petitions for adjustment of status as a battered spouse under the Violence Against Women Act ("VAWA") must establish the following:

> (aa) the marriage . . . was entered into in good faith by the alien; and
> (bb) during the marriage . . . , the alien or a child of the alien has been battered or has been the subject of extreme cruelty perpetuated by the alien's spouse. . .

The definition of who is eligible to petition for this relief is set forth in § 1154(a)(1)(B)(ii)(II):

---

[1]  At oral argument, both parties raised points about whether, if the two-year deadline is a statute of limitation, Plaintiff has presented adequate evidence establishing that she was a victim of ineffective assistance of counsel and that she pursued her claim with due diligence.  However, the issue of whether Plaintiff is entitled to equitable tolling in this case is not the subject of the instant Motion and was not briefed by the parties.  The only issue raised by the instant Motion is whether, as a matter of law, the two-year deadline in § 1154(a)(1)(B)(ii)(II)(aa)(CC)(aaa) is a statute of repose or statute of limitation.  Accordingly, the Court will address only this legal issue and makes no findings as to whether equitable tolling is appropriate in this case.

> For purposes of subclause (I), an alien described in this paragraph is an alien –
> . . .
> (CC) who was a bona fide spouse of a lawful permanent resident within the past 2 years and –
> > (aaa) whose spouse lost status within the past 2 years due to an incident of domestic violence; or
> > (bbb) who demonstrates a connection between the legal termination of the marriage within the past 2 years and battering or extreme cruelty by the lawful permanent resident spouse . . . .

**B.**   **Whether Defendants' Statutory Interpretation is Entitled to Deference**

Defendants argue that pursuant to *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984), the Court is required to defer to the AAO's interpretation of the two-year deadline at issue here.  Plaintiff contends that whether the deadline is a statute of repose or statute of limitation is solely one of statutory interpretation and, therefore, no deference to the agency is required.

*Chevron* requires the Court to utilize a two-step approach when reviewing a final agency action.  When Congress has spoken to the precise question at issue, the Court must give effect to the express intent of Congress.  *See id.*, 467 U.S. at 842-43.  If the statute is silent or ambiguous, however, the Court must defer to the agency's interpretation, if it is a permissible one.  *See id.* at 843-44.

However, it is not clear that the agency action at issue here is one that invokes *Chevron* deference.  The Tenth Circuit has held that deference to an agency interpretation of a statute is not required when the provision subject to interpretation does not fall within the agency's expertise and is a pure question of law:

> Generally, absent a direct expression of congressional intent, we must defer to an agency's reasonable interpretation of its governing statute.  However, it is not clear that deference is appropriate here.  *Chevron* appears

> to speak to statutory interpretation in those instances where
> Congress delegated rule-making power to an agency and
> thereby sought to rely on agency expertise in the formulation
> of substantive policy.  Determining the statute's temporal
> reach does not involve any special agency expertise.

*Jurado-Gutierrez v. Greene*, 190 F.3d 1135, 1147-48 (10th Cir. 1999) (internal citations omitted); *see also Goncalves v. Reno*, 144 F.3d 110, 127 (1st Cir. 1998) (finding that the validity of the BIA's retroactive application of an immigration statute "may be viewed as a pure question of statutory construction for the courts to decide, a question that is quite different from the question of interpretation that arises in each case in which the agency is required to apply [statutory] standards to a particular set of facts which involves the agency's particular expertise") (internal quotation marks and citations omitted).

Whether an alien meets the temporal requirements for obtaining immigration relief is "purely legal question and does not implicate agency discretion."  *Pinho v. Gonzales*, 432 F.3d 193, 204 (3d Cir. 2005); *see also Mejia Rodriguez v. U.S. Dep't of Homeland Security*, 562 F.3d 1137, 1144 (11th Cir. 2011) (statutory eligibility determinations are "legal, non-discretionary determinations" that do not implicate agency expertise).

In this case, the portion of the statute interpreted by Defendants—whether Plaintiff's spouse lost status within the last 2 years—does not invoke agency expertise. If Plaintiff were challenging the agency's interpretation of the term "lost status" or "spouse", then the Court would clearly defer to the agency's expertise, given the agency's administrative competence in matters related to immigration law.  But the Court here is not tasked with interpreting an ambiguous statutory term; the issue is how

-7-

Congress intended the statute to function and the temporal reach of the statute, neither of which involve special agency expertise.  *See Jurado-Gutierrez*, 190 F.3d at 1148.

The Second Circuit, when faced with a case similar to that here, held that the agency determination on this issue was not entitled to deference by the courts.  In *Iavorski v. United States Immigration and Naturalization Service*, 232 F.3d 124 (2d Cir. 2000), the plaintiff instructed his attorney to appeal his immigration determination and, although an attorney promised to do so, no appeal was filed.  Iavorski later learned of the lack of an appeal, hired a new attorney, and filed a motion to reopen his case.  The BIA denied Plaintiff's motion to reopen stating that ineffective assistance was not a valid reason to reopen his case under the relevant statute.  *Id.* at 127-28.

On appeal, the BIA argued that its interpretation of the statute was entitled to deference under *Chevron*.  The Second Circuit held:

> Because the issue of whether a limitations period creates a jurisdictional bar to untimely claims is itself a question purely of statutory construction, it fits squarely within the initial step in the *Chevron* analysis.  When, as here, we are called upon to engage only in an exercise of statutory interpretation, we avoid the danger of venturing into areas of special agency expertise, concerning which courts owe special deference under the *Chevron* doctrine.

*Id.* 133.  For these reasons, whether a temporal deadline functions as a statute of limitation or a statute of repose is a question of statutory interpretation better suited for the Court than an immigration agency.  *Bamidele v. INS*, 99 F.3d 557, 561 (3d Cir. 1996) (holding that the construction of a statute of limitations is "clearly a legal issue that courts are better equipped to handle").

Moreover, the parties represented to the Court at oral argument on the Motion that the AAO's decision in this case is unpublished and was not designated as

-8-

precedential.  In *United States v. Mead Corp.*, 533 U.S. 218, 226-27, (2001), the

Supreme Court elaborated on the scope of *Chevron*, holding that *Chevron* deference

applies only "when it appears that Congress delegated authority to the agency generally

to make rules carrying the force of law, *and* that the agency interpretation claiming

deference was promulgated in the exercise of that authority." (emphasis added).  *Mead*

thus placed crucial "limits [on] *Chevron* deference owed to administrative practice in

applying a statute," clarifying that agency interpretations promulgated in a

non-precedential manner are "beyond the *Chevron* pale."  *Id.* at 226, 234; *see also Hall

v. EPA*, 273 F.3d 1146, 1156 (9th Cir. 2001) ("Interpretations of the Act set forth in such

non-precedential documents are not entitled to *Chevron* deference.").

Because the AAO's decision in this case was unpublished and is not

precedential, it is not entitled to *Chevron* deference.  *See Garcia-Quintero*, 455 F.3d at

1012 ("the 'essential factor' in determining whether an agency action warrants *Chevron*

deference is its precedential value."); *River Street Donuts, LLC v. Napolitano*, 558 F.3d

111, 116 (1st Cir. 2009) (noting that it was questionable whether an unpublished AAO

decision was entitled to *Chevron* deference); *Gasboy Texas, Inc. v. Upchurch*, 2004 WL

396257, *2 (N.D. Tex. Jan. 22, 2004) (refusing to defer to unpublished AAO decision).

Therefore, Defendant's contention that the Court should give *Chevron* deference to the

AAO's interpretation of the two-year limitation at issue here is meritless.

Because whether the two-year deadline in § 1154(a)(1)(B)(ii)(II)(aa)(CC)(aaa)

functions as a statute of repose or statute of limitation does not invoke the agency's

expertise and is purely a legal question of statutory construction and interpretation, the

Court will not afford the AAO's interpretation of the statute any deference.

## C.     Analysis of Statute

Because the Court has determined that the agency's interpretation of

§ 1154(a)(1)(B)(ii)(II)(aa)(CC)(aaa) is not entitled to deference, the Court must review

the statute *de novo* and determine whether Congress intended the two-year deadline to

function as a statute of limitation or a statute of repose.  There is a crucial distinction in

the law between a statute of limitation and a statute of repose in that statutes of repose

are *per se* not subject to equitable tolling.[2]  *Lampf, Pleva, Lipkind, Prupis & Petigrow v.*

*Gilbertson*, 501 U.S. 350, 363 (1991) ("The 3–year limit is a period of repose

inconsistent with tolling. . . .  Because the purpose of the 3–year limitation is clearly to

serve as a cutoff, . . . tolling principles do not apply to that period."); *Amoco Production*

*Co v. Newton Sheep Co.*, 85 f.3d 1464, 1472 (10th Cir. 1996) (noting that "equitable

tolling is not appropriate against a statute of repose.").

The Tenth Circuit[3] has distinguished between statutes of limitation and statutes

---

[2]  Courts frequently use these terms—especially statute of repose—in a manner
inconsistent with this definition.  For example, in *Joseph v. Wiles*, 223 F.3d 1155 (10th
Cir. 2000), a case that involved whether a one-year statute of limitation was tolled by
plaintiff's status as a putative class member in a previously filed class action, the Tenth
Circuit discussed whether the "statute of repose" was subject to equitable tolling.  *Id.* at
1168.  The court ultimately held that the limitations period was tolled while the class
action was pending.  Thus, the Tenth Circuit's use of the term "statute of repose" in this
instance was not determinative of whether the deadline was subject to equitable tolling.
However, in general, the legal distinction between a statute of limitation and statute of
repose is that statutes of repose are not subject to equitable tolling.

[3]  In their briefing on the Motion, the parties repeatedly cite and argue the impact
of various out-of-circuit cases, specifically *Munoz v. Ashcroft*, 339 F.3d 950 (9th Cir.
2003) and *Abillo-DeLeon v. Gonzales*, 410 F.3d 1090 (9th Cir. 2005), while ignoring
relevant Tenth Circuit law.  This Court is bound to follow the Tenth Circuit's principles of
statutory interpretation and will, therefore, focus its analysis on Tenth Circuit law.

of repose as follows:  "Statutes of limitation bar a claim after a time period that begins to run when the cause of action accrues.  Statutes of repose, on the other hand, bar a claim after a period that is triggered by an arbitrary event unrelated to the accrual of the cause of action."  *Waller v. Pittsburgh Corning Corp.*, 946 F.2d 1514, 1515 n.1 (10th Cir. 1991).

In *Alexander v. Beech Aircraft*, 952 F.2d 1215 (10th Cir. 1991), the Tenth Circuit examined Indiana's statute that limited product liability actions to a deadline of ten years after the product was delivered to the initial user or consumer.  The court stated that "[a] statute of repose typically bars the right to bring an action after the lapse of a specified period, unrelated to the time when the claim accrued. The bar instead is tied to an independent event, such as delivery of the product to a purchaser in the stream of commerce for a products liability statute.  A statute of limitations generally bars the bringing of an action after the passage of a given period of time following the accrual of the claim."  *Id.* at 1218 n.2.  Although titled a "statute of limitation", the court concluded that the statute at issue there was actually a statute of repose because its ten-year deadline was tied to the date the product was delivered rather than the date the injury occurred giving rise to the product liability action.  *Id.* at 1222.

In other cases, the Tenth Circuit has held that the following statutes were statutes of repose: (1) Oklahoma's law banning all claims involving "improvement to real property" at ten years after substantial completion of the improvement, *see Riley v. Brown & Root, Inc.*, 896 F.2d 474, 475 (10th Cir. 1990); (2) Kansas's law requiring all product liability actions to be filed within ten years of the act giving rise to the cause of action, *Waller*, 946 F.2d at 1515; (3) Arkansas's law banning construction litigation five

years after the work was substantially completed, *Consolidated Grain & Barge Co. v. Structural Systems, Inc.*, 318 F. App'x 721, 723 (10th Cir. 2009); (4) Colorado's product liability law limiting actions filed seven years after the equipment was first used for its intended purpose, *Schneider v. Caterpillar, Inc.*, 301 F. App'x 755, 75 (10th Cir. 2008); and (5) Kansas's law preserving the rights of minors to file an action after reaching the age of majority but banning actions filed eight years after the incident occurred regardless of the victim's age, *Cosgrove v. Kansas Dep't of Social and Rehabilitation Servs.*, 162 F. App'x 823, 825-26 (10th Cir. 2006).

The two-year period at issue here is distinguishable from those cited above.  The self-petitioner is only eligible for relief under this section because she was the victim of an incident of domestic violence perpetrated by her spouse.  8 U.S.C. § 1154(a)(1)(B)(ii)(I)(bb) (stating that a self-petitioner must establish that she entered the marriage in good faith and "during the marriage . . . has been battered or has been the subject of extreme cruelty perpetrated by the alien's spouse").  An alien who is still married to her abuser is not eligible to petition for relief under § 1154(a)(1)(B)(I) until her spouse loses status;[4] therefore, her right to self-petition under this section accrues only upon the spouse's loss of status. 8 U.S.C. § 1154(a)(1)(B)(ii)(II)(aa)(CC)(aaa).  This fact

---

[4]  At oral argument, defense counsel argued that the spouse's loss of status was an independent event not tied to the accrual of the right to self-petition because Plaintiff could have filed a self-petition before her husband lost status.  However, upon questioning, counsel admitted that Plaintiff was not entitled to self-petition under the provision at issue in this case—8 U.S.C. § 1154(a)(1)(B)(ii)(II)(aa)(CC)(aaa)—until her husband's permanent resident status was revoked due to an incident of domestic violence.  Because the Court is only charged with interpreting § 1154(a)(1)(B)(ii)(II)(aa)(CC)(aaa) when ruling on the Motion, and not the overall statutory scheme in general, whether Plaintiff could have pursued relief under another provision of the statue is irrelevant.

alone distinguishes the two-year deadline in §1154(a)(1)(B)(ii)(II)(aa)(CC)(aaa) from the statutes of repose cited above.  That the loss of status is clearly not "an arbitrary event unrelated to the accrual of the cause of action" suggests that Congress did not intend the two-year deadline to be a statute of repose.  *See Waller*, 946 F.2d at 1515 n.1.

Additionally, the Tenth Circuit has acknowledged that one characteristic of a statute of repose is the possibility of a claim being barred before it has accrued.  *See Waller*, 946 F.2d at 1515 n.1 ("Thus, as in this case, it is possible for a statute of repose to bar a claim before it has accrued.").  The fact that the two-year deadline in §1154(a)(1)(B)(ii)(II)(aa)(CC)(aaa) is directly tied to the act that causes the relief to accrue, *i.e.* the spouse's loss of status, means that Plaintiff's cause of action cannot possibly accrue after the limitations period has expired.   This strongly suggests that the two-year deadline is a statute of limitation rather than a statute of repose.

Defendant argues that the two-year limitations period at issue here functions more like a statute of repose because "[t]he deadline does not constitute a variable period in which a petitioner may state a claim; it marks the final cut-off for the filing of VAWA self-petitions by former spouses of former lawful permanent residents."  (Mot. at 9.)  But the same is true of any limitations period—whether a statute of limitation or statute of repose.  *See*, *e.g.*, *See v. Hartley*, 896 P.2d 1049, 1054 (Kan. 1995) ("While there are differences between statutes of limitation and statutes of repose . . . both types of statutes constitute time limitations on the plaintiff's right to recover").  The fact that § 1154(a)(1)(B)(ii)(II)(aa)(CC)(aaa) imposes a two-year deadline on the right to self-petition does not mean that such deadline was intended to be a statute of repose rather than a statute of limitation.

Defendant also argues that VAWA's legislative history shows that Congress intended the two-year deadline to function as a statute of repose.  Congress's purpose in enacting the self-petition provisions of VAWA was, in part, to "permit [ ] battered immigrant women to leave their batterers without fearing deportation." H.R. Rep. No. 103-395, at 25.  The same House Report explains the purpose of allowing an abused spouse to self-petition: "[t]he purpose of permitting self-petitioning is to prevent the citizen or resident from using the petitioning process as a means to control or abuse an alien spouse."  *Id*.  Under the original version of VAWA, a battered immigrant's right to self-petition was voided by her spouse's deportation, even if the basis for such deportation was the abuse inflicted upon the petitioner.  *See Battered Immigrant Women Protection Act of 1999: Hearing Before the Subcommittee on Immigration and Claims of the House Committee of the Judiciary*, 106th Cong. 32 (2000) (Statement of Rep. John Conyers).

In 2000, Congress enacted the Victims of Trafficking and Violence Protection Act of 2000 ("VTVPA").  The VTVPA included within it the reauthorization for VAWA, which was entitled "VAWA 2000."  As a basis for enacting VAWA 2000, Congress found:

> [T]here are several groups of battered immigrant women and children who do not have access to the immigration protections of the Violence Against Women Act of 1994 which means that their abusers are virtually immune from prosecution because their victims can be deported as a result of action by their abusers and the Immigration and Naturalization Service cannot offer them protection no matter how compelling their case under existing law.

Pub. L. 106-386, § 1502(a)(3), 114 Stat. 1464 (2000).  Congress found that "providing battered immigrant women. . . with protection against deportation. . . frees them to cooperate with law enforcement . . . without fearing that the abuser will retaliate by

withdrawing or threatening withdrawal of access to an immigration benefit under the abuser's control." *Id.* § 1502(a)(2).

In light of these findings, VAWA 2000 further refined and expanded the original VAWA to address some obstacles that had not come to the attention of the original VAWA drafters, or that had arisen from subsequent changes to immigration law. Relevant to this action, VAWA 2000 added the statute at issue here allowing battered women whose spouses were deported to self-petition within two years of the spouse's loss of status. *See* Pub. L. 106-386, 1503, 114 Stat. 1464 (2000).

Defendant argues that the legislative history shows a Congressional intent for the two-year deadline to function as a statute of repose because it shows that Congress wanted to limit the time that battered spouses could seek relief after the loss of status of their spouses. However, the concerns expressed by Congressional members during the VAWA debate with respect to the spoliation of evidence and the need to prevent fraudulent self-petitions mirror those concerns typically associated with the reason for including within a piece of legislation a statute of limitations rather than a statute of repose. *See State of Colorado v. Western Paving Constr. Co.*, 833 F.2d 867, 878 (10th Cir. 1987) ("The statute of limitations exists for the purposes of barring stale conflicts."); *Deen v. Egleston*, 597 F.3d 1223, 1232-33 (11th Cir. 2010) ("A statute of limitation, by definition arbitrary, is enacted to provide potential defendants with the assurance of eventual repose from claims made stale by the passage of time.").

Additionally, the legislative history indicates that Congress intended the self-petition provisions of VAWA to be a "generous enactment, intended to ameliorate the impact of harsh provisions of immigration law on abused women." *Lopez-Birrueta v.*

*Holder*, 633 F.3d 1211, 1216 (9th Cir. 2011).  Generally, when the legislature enacts an

ameliorative rule, the rule will be interpreted and applied in an ameliorative fashion.

*Hernandez v. Ashcroft*, 345 F.3d 824, 840 (9th Cir. 2003).  "This is particularly so in the

immigration context where doubts are to be resolved in favor of the alien."  *Id.*; *see also*

*Matter of Vizcaino*, 19 I. & N. Dec. 644, 648 (BIA 1988) (noting that expansion of relief

"clearly was intended as a generous provision, and it should therefore be generously

interpreted").

     Through VAWA 2000, Congress intended to expand eligibility to file a self-petition to

an additional category of battered non-citizen spouses—those whose spouse was

deported due to an incident of domestic violence.  Nothing in the text of the statute or in its

legislative history suggests that, by placing a two-year deadline on self-petitioning after the

loss of status, Congress intended to establish an inflexible mandatory and/or jurisdictional

limitation on relief.  Accordingly, for all of the above reasons, the Court concludes that

Congress intended § 1154(a)(1)(B)(ii)(II)(aa)(CC)(aaa)'s two-year deadline to function as a

statute of limitation rather than a statute of repose, and thus subject to equitable tolling.

## IV.  CONCLUSION

     Because whether the two-year deadline contained within 8 U.S.C. §

1154(a)(1)(B)(ii)(II)(aa)(CC)(aaa) is a statute of repose or statute of limitation is a question

of statutory construction that does not invoke agency expertise, the Court decides this

issue *de novo* and without deference to the statutory construction adopted by the USCIS.

Having reviewed the text of the statute, the statute's legislative history, as well as the

relevant case law, the Court concludes that: (a) Congress intended §

1154(a)(1)(B)(ii)(II)(aa)(CC)(aaa)'s two-year deadline to function as a statute of limitation

subject to equitable tolling, rather than a statute of repose, and (b) the AAO's construction

of the statutory provision at issue here was not in accordance with the law, within the

meaning of the APA, 5 U.S.C. § 706(2)(A).

Accordingly, Defendants' Motion to Dismiss is hereby DENIED.[5]

Dated this 24th day of June, 2011.

BY THE COURT:

William J. Martinez
United States District Judge

---

[5]  In so holding, the Court makes no finding as to whether Plaintiff is in fact entitled to equitable tolling in this case and/or the propriety of USCIS's findings with respect to her right to equitable tolling.  These issues are outside of the scope of the instant Motion.